UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN THOMPSON, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. _____ |
| v. ) ) | JURY TRIAL DEMANDED |
| QIAGEN N.V., HÅKAN BJÖRKLUND, STÉPHANE BANCEL, METIN COLPAN, ROSS L. LEVINE, ELAINE MARDIS, LAWRENCE A. ROSEN, ELIZABETH E. TALLETT, THERMO FISHER SCIENTIFIC INC., and QUEBEC B.V., ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on March 3, 2020 (the "Proposed Transaction"), pursuant to which QIAGEN N.V. ("QIAGEN" or the "Company") will be acquired by Thermo Fisher Scientific, Inc. ("Parent"), a Delaware corporation, and Quebec B.V. ("Merger Sub," and together with Parent, "Thermo Fisher").

2. On March 3, 2020, QIAGEN's Supervisory Board (the "Board" or "Individual Defendants") caused the Company to enter into a Business Combination Agreement (the "Agreement") with Thermo Fisher. Pursuant to the terms of the Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to purchase all of QIAGEN's outstanding ordinary shares for €39.00 in cash per share. The Tender Offer is set to expire on July 27, 2020.

3. On May 18, 2020, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of QIAGEN common stock.

9. Defendant QIAGEN is public limited liability company organized under the laws of The Netherlands and is a party to the Agreement. QIAGEN's common stock is traded on the New York Stock Exchange under the ticker symbol "QGEN."

10. Defendant Håkan Björklund is Chairman of the Board of the Company.

11. Defendant Stéphane Bancel is a director of the Company.

12. Defendant Metin Colpan is a director of the Company.

13. Defendant Ross L. Levine is a director of the Company.

14. Defendant Elaine Mardis is a director of the Company.

15. Defendant Lawrence A. Rosen is a director of the Company.

16. Defendant Elizabeth E. Tallett is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Parent is a Delaware corporation and a party to the Agreement.

19. Defendant Merger Sub is a private limited liability company organized under the laws of The Netherlands and a wholly-owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of QIAGEN (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of February 25, 2020, there were approximately 227,880,497 QIAGEN ordinary shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

27.     QIAGEN is the leading global provider of Sample to Insight solutions that enable customers to gain molecular insights from samples.

28.     The Company's sample technologies isolate and process DNA, RNA, and proteins from blood, tissue, and other materials.

29.     The Company provides solutions to more than 500,000 customers around the world in Molecular Diagnostics (human healthcare) and Life Sciences (academia, pharma R&D, and industrial applications, primarily forensics).

30. On March 3, 2020, QIAGEN's Board caused the Company to enter into the Agreement with Thermo Fisher.

31. Pursuant to the terms of the Agreement, Merger Sub commenced the Tender Offer to acquire all of QIAGEN's outstanding ordinary shares for €39.00 per share in cash.

32. According to the press release announcing the Proposed Transaction:

Thermo Fisher Scientific Inc. (NYSE: TMO), the world leader in serving science, and QIAGEN N.V. (NYSE: QGEN; Frankfurt Prime Standard: QIA), a leading global provider of molecular diagnostics and sample preparation technologies, today announced that their boards of directors, as well as the managing board of QIAGEN N.V., have unanimously approved Thermo Fisher's proposal to acquire QIAGEN for €39 per share in cash. The offer price represents a premium of approximately 23% to the closing price of QIAGEN's common stock on the Frankfurt Prime Standard on March 2, 2020, the last trading day prior to the announcement of the transaction. Thermo Fisher will commence a tender offer to acquire all of the ordinary shares of QIAGEN. . . .

Financing and Approvals

The transaction, which is expected to be completed in the first half of 2021, is subject to the satisfaction of customary closing conditions, including the receipt of applicable regulatory approvals, the adoption of certain resolutions relating to the transaction at an Extraordinary General Meeting of QIAGEN's shareholders, and completion of the tender offer. . . .

Advisors

J.P. Morgan Securities LLC and Morgan Stanley & Co. LLC are serving as financial advisors to Thermo Fisher, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel. For QIAGEN, Goldman Sachs International is serving as lead financial advisor and Barclays Bank PLC is serving as financial advisor, while De Brauw Blackstone Westbroek NV, Linklaters LLP and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo P.C. are serving as legal counsel.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

33. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

34. As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

35. First, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Barclays Bank PLC ("Barclays") and Goldman Sachs International ("Goldman").

36. With respect to Barclays' Selected Precedent Transaction Analysis, the Solicitation Statement fails to disclose: (i) the individual multiples and metrics for the transactions observed by Barclays in the analysis; (ii) QIAGEN's net debt; and (iii) the number of fully diluted outstanding QIAGEN shares.

37. With respect to Barclays' Illustrative Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%; (ii) the terminal values for QIAGEN; (iii) Barclays' basis for applying a range of terminal value exit multiples ranging from 16.0x to 20.0x; (iv) QIAGEN's net debt; and (v) the number of fully diluted QIAGEN shares.

38. With respect to Barclays' Illustrative Present Value of Future Share Price Analysis, the Solicitation Statement fails to disclose: (i) Barclays' basis for applying next-twelve-months adjusted P/E multiples ranging from 22.0x to 26.0x; and (ii) the individual inputs and assumptions underlying the range of illustrative discount rates of 9.0% to 10.0%.

39. With respect to Barclays' Illustrative Selected Comparable Company Analysis, the Solicitation Statement fails to disclose the individual multiples and metrics for the companies observed by Barclays in the analysis.

40. The Solicitation Statement fails to disclose a fair summary of Barclays' estimates and analyses "concerning the impact of the Proposed Transactions on the Bond Hedge and Warrant

Transactions 2024."

41. With respect to Goldman's Selected Precedent Transaction Analysis, the Solicitation Statement fails to disclose: (i) the individual multiples and metrics for the transactions observed by Goldman in the analysis; (ii) QIAGEN's net debt; and (iii) the number of fully diluted outstanding QIAGEN shares.

42. With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 6.5% to 7.5%; (ii) the terminal values for QIAGEN; (iii) Goldman's basis for applying terminal value exit multiples ranging from 16.0x to 20.0x; (iv) QIAGEN's net debt; and (v) the number of fully diluted QIAGEN shares.

43. With respect to Goldman's Illustrative Present Value of Future Share Price Analysis, the Solicitation Statement fails to disclose: (i) Goldman's basis for applying next-twelve-months adjusted P/E multiples ranging from 22.0x to 26.0x; and (ii) the individual inputs and assumptions underlying the discount rate of 7.4%.

44. With respect to Goldman's Premia Analysis, the Solicitation Statement fails to disclose the individual premiums for the transactions observed by Goldman in the analysis.

45. With respect to Goldman's Illustrative Selected Comparable Company Analysis, the Solicitation Statement fails to disclose the individual multiples and metrics for the companies observed by Goldman in the analysis.

46. The Solicitation Statement fails to disclose a fair summary of Goldman's "estimates and analyses concerning the impact of the Proposed Transactions on the Bond Hedge and Warrant Transactions 2023."

47. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48. Second, the Solicitation Statement omits material information regarding the Company's financial projections.

49. The Solicitation Statement fails to disclose all line items used to calculate Adjusted EBITDA and Adjusted EBIT.

50. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

51. Third, the Solicitation Statement fails to disclose whether the Company entered into any non-disclosure agreements that contained "don't ask, don't waive" provisions that are or were preventing other potential acquirors from requesting waivers of standstill provisions to submit offers to acquire the Company.

52. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

53. Fourth, the Solicitation Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

54. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for

stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

56. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

59. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

60. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

61. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

62. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

63. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

64. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

65. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

66. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

67. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

70. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and

the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

71. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

72. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

73. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

74. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and Thermo Fisher)**

75. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76. The Individual Defendants and Thermo Fisher acted as controlling persons of QIAGEN within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as directors of QIAGEN and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

77. Each of the Individual Defendants and Thermo Fisher was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

78. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

79. Thermo Fisher also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

80. By virtue of the foregoing, the Individual Defendants and Thermo Fisher violated Section 20(a) of the 1934 Act.

81. As set forth above, the Individual Defendants and Thermo Fisher had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

82. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

83. Plaintiff and the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| Dated: May 29, 2020 | **RIGRODSKY & LONG, P.A.** |
| | By: */s/ Gina M. Serra* |
| | Brian D. Long (#4347) |
| **OF COUNSEL:** | Gina M. Serra (#5387) |
| | 300 Delaware Avenue, Suite 1220 |
| **RM LAW, P.C.** | Wilmington, DE 19801 |
| Richard A. Maniskas | Telephone: (302) 295-5310 |
| 1055 Westlakes Drive, Suite 300 | Facsimile: (302) 654-7530 |
| Berwyn, PA 19312 | Email: bdl@rl-legal.com |
| Telephone: (484) 324-6800 | Email: gms@rl-legal.com |
| Facsimile: (484) 631-1305 | |
| Email: rm@maniskas.com | *Attorneys for Plaintiff* |